UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH FRANK ANDRADE                          CIVIL ACTION

VERSUS

WAYNE T. STEWART, ET AL.                       NO. 20-00886-BAJ-SDJ

RULING AND ORDER

Before the Court is Plaintiff's *pro se* **Motion for Preliminary Injunction**
**(Doc. 22).** The Motion is opposed. (Doc. 30). Plaintiff filed a Reply. (Doc. 32).
Defendant filed a Sur-Reply. (Doc. 36). Plaintiff seeks a Court Order directing
Defendant East Baton Rouge Parish School Board to enroll Plaintiff's son, J.A., in a
private residential facility focused on educating children with autism, paid for by the
School Board, and subject to Plaintiff's approval. (Doc. 22-2, p. 1). Plaintiff asks the
Court to make this Order effective during the pendency of proceedings in the
above-captioned matter, including any appeal. (*Id.* at p. 1–2). For the reasons stated
herein, Plaintiff's Motion is **DENIED.**

I.    BACKGROUND

This case arises out of the allegedly inadequate education J.A. received at
East Baton Rouge Parish public schools. (Doc. 29). Plaintiff withdrew his son from
public school in October 2019 and enrolled him in Hope Academy, a private school.
(*Id.* at ¶ 3; Doc. 29-1, p. 6). Plaintiff now seeks to enroll his son in the Monarch Center
for Autism at East Baton Rouge Parish School Board's cost. (Doc. 29, p. 39).

1

Plaintiff alleges the following facts. Plaintiff is J.A.'s father. (*Id.* at ¶ 3). J.A. attended Woodlawn Elementary School from August 2014 through October 10, 2019. (*Id.*). East Baton Rouge Parish School Board ("School Board") was the "owner and operator" of Woodlawn. (*Id.*). In December 2011, J.A. developed seizures and was diagnosed with epilepsy at the age of three. (*Id.*). On June 14, 2019, J.A. was diagnosed with autism. (*Id.* at ¶ 18).

Plaintiff previously filed a complaint with the Louisiana Department of Education regarding Woodlawn. (*Id.* at ¶ 5). Therein, Plaintiff alleged that the Woodlawn faculty and administration lied to him for four years by informing Plaintiff that J.A. could not be held back. (*Id.*). Plaintiff also alleged that the Woodlawn faculty allowed J.A. to hit, kick, push, and spit on his classmates without recourse. (*Id.*). The Woodlawn administration was allegedly unaware of these events. (*Id.*). Because Woodlawn did not enforce boundaries at school, J.A.'s behavior allegedly worsened. (*Id.* at ¶ 9). Plaintiff further alleged that Woodlawn did not follow the Individualized Education Plan ("IEP") developed for J.A.[1] (*Id.* at ¶ 5). Moreover, Plaintiff asserted that the School Board did not properly evaluate J.A., and if it had, the need for autism related services would have been identified sooner. (*Id.*).

On February 2, 2020, an investigating attorney for the LDOE issued a letter concluding that "the evidence does not allow for a conclusion that the East Baton

---

[1] The IEP is "the centerpiece of the statute's education delivery system for disabled children." *M.W. through Moore-Watson v. Rankin Cty. Pub. Sch. Dist.*, No. 3:19-CV-107 HTW-LGI, 2022 WL 340688, at *4 (S.D. Miss. Jan. 5, 2022) (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988)). "It is a comprehensive plan prepared by a child's IEP Team, which includes teachers, school officials, and the child's parents." *Id.* (citing 20 U.S.C. § 1414(d)(1)(B)).

Rouge Parish school system did not provide the student FAPE[,]" a "free appropriate public education."[2] (*Id.* at ¶ 16). Plaintiff submitted a Due Process Hearing request on May 29, 2020 to the Division of Administrative Law. (*Id.* at ¶ 17). A Due Process hearing was held from August 3, 2020, through August 5, 2020. (*Id.* at ¶ 28). The Administrative Law Judge ruled against Plaintiff, finding that he "did not prove that [the] School Board denied Child FAPE by not identifying Child's exceptionality as autism in the reevaluation. [] Because Parent did not prove a denial of FAPE, Parent is not entitled to the requested remedies." (Doc. 29-1, p. 231–232).

Plaintiff submitted a second Due Process hearing request on September 17, 2020. (Doc. 29, ¶ 28). On September 30, 2020, the Hearing Officer rendered her decision in favor of the School Board. (*Id.* at ¶ 33).

Plaintiff initiated this action to appeal the Administrative Law Judge's decision. (Doc. 29). Plaintiff currently seeks a preliminary injunction. (Doc. 22).

## II.    PROCEDURAL HISTORY

Plaintiff filed suit on behalf of himself and his minor child, J.A. (Doc. 1). Plaintiff asserts that the Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(2)(A) and 28 U.S.C. § 1331. (Doc. 29, ¶ 2). The Court indeed has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, based on the federal question asserted under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*

Defendants moved to dismiss Plaintiff's claims. (Doc. 15). The Court granted

---

[2] "Included within the framework of the IDEA is the requirement that local educational agencies must provide to each disabled child within its jurisdiction a 'free appropriate public education'" (FAPE). *M.W. through Moore-Watson v. Rankin Cty. Pub. Sch. Dist.*, No. 3:19-CV-107 HTW-LGI, 2022 WL 340688, at *6 (S.D. Miss. Jan. 5, 2022).

Defendants' Motion in part and denied Defendants' Motion in part. (Doc. 45). The claims remaining in the case include Plaintiff's claims, both individually and on behalf of his minor son, against the School Board pursuant to the IDEA and under Louisiana tort law for negligent misrepresentation. (*Id.* at p. 4).

## III.   LEGAL STANDARD

### A. Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008) (internal citations and quotations omitted); *see also Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.,* 878 F.2d 806, 809 (5th Cir. 1989) (preliminary injunctive relief "is an extraordinary remedy and should be granted only if the movant has clearly carried the burden of persuasion with respect to all four factors"); *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 760 F.2d 618, 621 (5th Cir. 1985) ("The decision to grant a request for preliminary injunction is to be treated as the exception rather than the rule."). The decision to grant or deny a request for preliminary injunction is within the sound discretion of the Court. *See Allied Mktg. Grp., Inc.,* 878 F.2d at 809.

At all times, the burden of persuasion rests with the plaintiff to establish each of the four elements required for issuance of a preliminary injunction: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will "not disserve the public interest." *See Barton v. Huerta,* 613 Fed. App'x

426, 427 (5th Cir. 2015) (citation omitted). If a plaintiff fails to meet its burden regarding any of the necessary elements, the Court need not address the other elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that the plaintiff failed to show a substantial likelihood of success on the merits); *see also Garden Dist. Book Shop, Inc. v. Stewart*, 184 F. Supp. 3d 331, 335 (M.D. La. 2016). A preliminary injunction is an "extraordinary remedy" that should not be granted unless a party demonstrates the above four factors by a "clear showing." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir.1997).

### B. IDEA

The IDEA is a federal law that governs special education and related services in public schools for students with disabilities. *Mann v. La. High Sch. Athletic Ass'n*, 535 F. App'x 405, 410–11 (5th Cir. 2013) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 179–81 (1982) (describing the IDEA). The IDEA applies to all students "with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities . . . who, by reason thereof, need[ ] special education and related services." *Mann*, 535 F. App'x at 411 (citing 20 U.S.C. § 1401(3)). "In short, the IDEA provides that special education services must be provided to those public school

students who, by reason of an impairment or learning disability, need special
education services." *Id.*

The purpose of IDEA:

> is principally to provide handicapped children with a free appropriate
> public education which emphasizes special education and related
> services designed to meet their unique needs. The Act contemplates that
> such education will be provided where possible in regular public schools,
> with the child participating as much as possible in the same activities
> as nonhandicapped children, but the Act also provides for placement in
> private schools at public expense where this is not possible.

*St. Tammany Par. Sch. Bd. v. State of La.*, 142 F.3d 776, 783 (5th Cir. 1998) (citing
*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*,
471 U.S. 359, 369 (1985) (internal quotation marks and citations omitted)).

Under the IDEA, schools must identify disabled children, evaluate them,
create an "Individualized Education Plan" ("IEP") for each child so identified, and
review every IEP at least once each year. 20 U.S.C. § 1414(d)(2) and (d)(4); *see
M.W. through Moore-Watson v. Rankin Cty. Pub. Sch. Dist.*,
No. 3:19-CV-107 HTW-LGI, 2022 WL 340688, at *2–3 (S.D. Miss. Jan. 5, 2022) (citing
*Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005)). Each IEP must include an
assessment of the child's current educational performance, must articulate
measurable educational goals, and must specify the nature of the special services that
the school will provide. 20 U.S.C.§ 1414(d)(1)(A); *see M.W. through Moore-Watson*,
2022 WL 340688, at *2–3 (citing *Schaffer* at 546 U.S. at 53).

At the core of the IDEA is the cooperative process that it establishes between
parents and schools. *M.W. through Moore-Watson*, 2022 WL 340688, at *3. Congress

placed great importance upon compliance with procedures giving parents a large degree of participation at every stage of the administrative process. *Id.* (citing *Bd. Of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 205–06 (1982)).

> They [the parents] must be informed about and consent to evaluations of their child under the Act. § 1414(c)(3). Parents are included as members of "IEP teams." § 1414(d)(1)(B). They have the right to examine any records relating to their child, and to obtain an "independent educational evaluation of the[ir] child." § 1415(b)(1). They must be given written prior notice of any changes in an IEP, § 1415(b)(3), and be notified in writing of the procedural safeguards available to them under the Act, § 1415(d)(1).

*M.W. through Moore-Watson*, 2022 WL 340688, at *2–3 (citing *Schaffer*, 546 U.S. at 53).

### i. Standard of Review Under the IDEA

Under the IDEA, the court reviews the factual findings of administrative hearing officers "virtually de novo." *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 979–80 (5th Cir. 2016). The district court is required to "accord 'due weight' to the hearing officer's findings," but it "must ultimately reach an independent decision based on the preponderance of the evidence." *Id.* at 966. In turn, the court must "reach . . . independent conclusion[s] based upon the preponderance of the evidence" as to such questions as whether students require more or less restrictive learning environments, whether IEPs are "reasonably calculated to enable [children] to receive educational benefits," and whether schools' failures in implementing IEPs implicate "significant provisions of . . . IEP[s]" or are instead "de minimis." *Id.* at 979.

### ii. Relief Available under IDEA

The United States Supreme Court has emphasized that "[p]arents are entitled to reimbursement [of private school tuition] only if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act." *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246 (2009) (emphasis omitted). Even then, according to the *Forest Grove* case, courts have discretion as to the amount of a reimbursement award. *Id.* at 247. A court may consider the equities involved in deciding whether parents are entitled to reimbursement for some or all of the child's private school tuition, such as whether the parents gave the School District notice that they intended to enroll their child in private school, and the School District's opportunities for evaluating the child. *Id.*

Parents who "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk," *Id.* (quoting *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993)); *see also M.W. through Moore-Watson*, 2022 WL 340688, at *3–8 ("This court does not order Defendant to pay for M.W.'s private school tuition; however, should M.W.'s parents choose to re-enroll M.W. in the Rankin County School District, this court orders that he receive all appropriate testing and evaluation [] and that a new IEP should be developed with the input of the child's parents . . .").

## IV.   DISCUSSION

To succeed on a preliminary injunction, Plaintiff must establish a substantial likelihood of prevailing on the merits. *See Barton v. Huerta*, 613 Fed. App'x 426, 427

(5th Cir. 2015). Accordingly, the Court begins its inquiry here. For the reasons stated below, the Court finds that Plaintiff cannot bear his burden at this stage of the litigation.

Plaintiff seeks a Court Order directing the School Board to enroll J.A. in a private residential facility focused on educating children with autism, paid for by the School Board, and subject to Plaintiff's approval. (Doc. 22-2, p. 1). Plaintiff appears to specifically request J.A.'s enrollment at Monarch Center for Autism. (Doc. 29, p. 39). Plaintiff asks the Court to make this Order effective during the pendency of proceedings in the above-captioned matter, including any appeal.[3] (Doc. 22-2, p. 1–2).

The School Board argues that residential placement is neither necessary nor appropriate. (Doc. 36, p. 1). The School Board asserts that Plaintiff must be placed in the least restrictive environment appropriate to his needs, and that a residential placement is the *most* restrictive environment in which a student may be placed. (*Id.* at p. 2).

The School Board also argues that because J.A. has not been enrolled in East Baton Rouge Parish schools since 2019, the IEP Team has not had the opportunity to consider the recommendations contained in J.A.'s private evaluation. (*Id.* at p. 3). Additionally, the IEP Team has not had an opportunity to develop and offer an IEP in accordance with its own reevaluation completed in January 2020 due to Plaintiff's

---

[3] The Court notes that it will not consider whether Plaintiff is entitled to reimbursement for J.A.'s current placement in private school at this time. The relief requested in Plaintiff's Motion for Preliminary Injunction is confined to his request for J.A.'s placement in a residential school paid for by the School Board.

removal of J.A. from the public school. (*Id.*). The School Board contends that consideration of residential placement at public expense prior to having this opportunity would be premature. (*Id.* at p. 4).

The U.S. Court of Appeals for the Fifth Circuit articulated the test for determining the appropriateness of residential placement as follows: "[F]or a residential placement to be appropriate under IDEA, the placement must be 1) essential in order for the disabled child to receive a meaningful educational benefit, and 2) primarily oriented toward enabling the child to obtain an education." *Richardson Indep. Sch. Dist. v. Michael Z*, 580 F.3d 286, 299 (5th Cir. 2009). The Circuit emphasized:

> The first prong of our test requires a court to find that the placement is *essential* for the child to receive a meaningful educational benefit. In other words, if a child is able to receive an educational benefit without the residential placement, even if the placement is helpful to a child's education, the school is not required to pay for it under IDEA. This formulation of the test aligns with the goal of IDEA: to enable a disabled child to receive a meaningful educational benefit. Moreover, this prong is directly tied to IDEA's implementing regulations, which state that "[i]f placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child." 34 C.F.R. § 300.302.

*Id.* at 300. Accordingly, for present purposes, the Court must first determine whether Plaintiff has carried his burden of showing that placement at a residential facility is *essential* for J.A. to receive a meaningful educational benefit. *See id.*

Here, the Court concludes that Plaintiff has failed to show a substantial likelihood that a residential placement is essential to J.A.'s education. While perhaps J.A. would benefit from a residential placement, the Fifth Circuit demands more

before the State is required to pay for it: Plaintiff must show that the child is unable to receive an educational benefit *without* the residential placement. *See id.* It is undisputed that J.A. currently attends a private school, Hope Academy. There is no indication, however, that J.A. is unable to receive an educational benefit in his current environment at the Hope Academy.

Second, the Court must determine whether the residential placement is primarily oriented toward enabling J.A. to obtain an education. *Id.* Regarding this second prong, the Fifth Circuit has emphasized:

> IDEA, though broad in scope, does not require school districts to bear the costs of private residential services that are primarily aimed at treating a child's medical difficulties or enabling the child to participate in non-educational activities. IDEA ensures that all disabled children receive a meaningful education, but it was not intended to shift the costs of treating a child's disability to the public school district. This is made clear in IDEA's definition of "related services," which limit reimbursable medical services to those "for diagnostic and evaluation purposes only." 20 U.S.C. § 1401(22); *see Irving Ind. Sch. Dist. v. Tatro*, 468 U.S. 883, 892–93, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984) (noting that the medical services exclusion was "designed to spare schools from an obligation to provide a service that might well prove unduly expensive and beyond the range of their competence."); *Teague*, 999 F.2d at 132 (denying reimbursement for private residential treatment and observing that the private facility's "focus was on behavior management" and that the private facility "devoted only the same or a little more time to Todd's educational programming than did the [public] school.").

*Id.*

The Fifth Circuit described the second prong of the test as "necessarily a fact-intensive inquiry." *Id.* at 301. The Circuit directed the court to consider the extent to which the services provided by the residential placement fall within the IDEA's definition of "related services." *Id.* This "related services" analysis should inform

other factors a court may consider in determining whether the placement is primarily oriented toward enabling a child to obtain an education. *Id.* Such factors include, but are not limited to: "whether the child was placed at the facility for educational reasons and whether the child's progress at the facility is primarily judged by educational achievement." The Fifth Circuit declared:

> If, upon analysis of the services as a whole, the court determines that the residential placement is primarily oriented toward enabling the child to obtain an education, the court must then examine each constituent part of the placement to weed out inappropriate treatments from the appropriate (and therefore reimbursable) ones. In other words, a finding that a particular private placement is appropriate under IDEA does not mean that all treatments received there are *per se* reimbursable; rather, reimbursement is permitted only for treatments that are related services as defined by the IDEA at 20 U.S.C. § 1401(22).

*Id.*

Here, again, the record is not sufficiently developed to determine whether Plaintiff's proposed residential placement, the Monarch Center for Autism, meets the standard articulated by the Fifth Circuit. (Doc. 30, p. 5). The record does not contain sufficient information regarding Monarch or its services such that the Court can determine whether its primary purpose is educational or the extent to which Monarch's services fall within the IDEA's definition of "related services." Additionally, the Court is unable to examine "each constituent part of the placement to weed out inappropriate treatments from the appropriate (and therefore reimbursable) ones." *See Richardson Indep. Sch. Dist.*, 580 F.3d 286, 301 (5th Cir. 2009).

Accordingly, the Court finds that Plaintiff cannot bear his burden of proving

that he is substantially likely to succeed on the merits in obtaining residential placement for J.A. And because Plaintiff's claim to injunctive relief fails at the first step of the analysis, the Court need not address the other elements necessary for granting a preliminary injunction. *See Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990).[4]

The Court also finds it appropriate to consider appointing counsel to represent Plaintiff from the Court's Civil Pro Bono Panel.[5] Following the Court's ruling on the appointment of counsel, the Court shall immediately refer this matter to the Magistrate Judge for the issuance of an expedited Scheduling Order.

## V.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's **Motion for Preliminary Injunction (Doc. 22)** is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall each file a Memorandum within 14 days of the issuance of this Ruling and Order, regarding the appropriateness of appointing counsel to represent Plaintiff and his minor son in this matter. The Memoranda shall not exceed eight pages.

---

[4] It bears reminding that a preliminary injunction is an "extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). Indeed, Plaintiff may succeed at a later stage of the litigation.

[5] *See* https://www.lamd.uscourts.gov/civil-pro-bono-pilot-program (last visited Mar. 28, 2022).

**IT IS FURTHER ORDERED** that, following the Court's ruling regarding the appointment of counsel, this matter shall be immediately **REFERRED** to the Magistrate Judge for the issuance of an expedited Scheduling Order.

Baton Rouge, Louisiana, this 29th of March, 2022

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

14